1
2
3
4
5
6 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
7 AT TACOMA

8 KATHLEEN S.,

Plaintiff,            Case No. C19-5167 RSL
9

10          v.                      ORDER REVERSING AND
REMANDING DENIAL OF
11 COMMISSIONER OF SOCIAL         BENEFITS
SECURITY,
12
Defendant.
13

14       Plaintiff Kathleen S. appeals the final decision of the Commissioner of the Social

15 Security Administration ("Commissioner"), which denied her application for disability

16 insurance benefits under Title II of the Social Security Act, (the "Act"), 42 U.S.C. §§401-

17 33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth

18 below, the Commissioner's decision is REVERSED and REMANDED for further

19 administrative proceedings under 42 U.S.C. §405(g).

20              I.      FACTS AND PROCEDURAL HISTORY

21       Plaintiff is a 42-year-old woman with a high school education. See Admin.

22 Record ("AR") at 69. Plaintiff applied for benefits, alleging disability as of May 2, 2017.

23 Id. at 112. Her claims were denied on initial administrative review and on

reconsideration. Id. at 112-33. On September 6, 2018, ALJ Malcolm Ross held a hearing, at which Plaintiff and a vocational expert testified. Id. at 64-110.

On December 4, 2018, ALJ Ross issued a decision denying Plaintiff's claim for benefits. Id. at 16-27. The Appeals Council denied review. Id. at 2-4. Plaintiff then sought review before this Court. Compl. (Dkt. #3).

## II.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. §405(g), the Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

## III.     EVALUATING DISABILITY

Plaintiff bears the burden of proving that she is disabled within the meaning of the

Act. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §423(d)(2)(A); <u>see also</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. <u>See</u> 20 C.F.R. §404.1520. The claimant bears the burden of proof during steps one through four. <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner. <u>Id.</u> If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §404.1520(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. <u>Id.</u> At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). If the

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. §404.1572.

claimant does not have such impairments, she is not disabled.  Id.  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §404.1520(d).  A claimant whose impairment meets or equals one of the listings for the required 12-month duration is disabled.  Id.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §404.1520(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §404.1520(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §404.1520(g); Tackett, 180 F.3d at 1099-100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.  20 C.F.R. §404.1520(g).

### IV.    DECISION BELOW

On December 4, 2018, ALJ Ross issued a decision finding the following:

1.    The claimant has not engaged in substantial gainful activity since May 2, 2017, the alleged onset date.  See 20 C.F.R. §§404.1571-76.

2.    The claimant has the following severe impairments:  Complex regional pain

syndrome I ("CRPS") of the bilateral lower limbs, plantar fasciitis, right first metatarsophalangeal joint hallux rigidus, posttraumatic stress disorder ("PTSD"), chronic adjustment disorder with anxious and depressed mood, and migraine headaches. See 20 C.F.R. §404.1520(c).

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. §§404.1520(d), 404.1525, 404.1526.

4.     The claimant has the RFC to perform light work as defined in 20 C.F.R. §404.1567(b), with exceptions. She can frequently climb, balance, stoop, kneel, crouch, and crawl. She can frequently handle and finger bilaterally. She can withstand frequent exposure to extreme cold, vibrations, and hazards such as heights and machinery. She must avoid exposure to noise levels in excess of level three. She can perform simple and complex tasks, and can have occasional, superficial interaction with the public, coworkers, and supervisors.

5.     The claimant is unable to perform any past relevant work. See 20 C.F.R. §404.1565.

6.     Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. See 20 C.F.R. §§404.1569, 404.1569(a).

7.     The claimant has not been under a disability, as defined in the Act, from the alleged disability onset date through the date of the ALJ's decision. See 20 C.F.R. §404.1520(g).

AR at 16-27.

## V.    ISSUES ON APPEAL

A.     Whether the ALJ reasonably evaluated Plaintiff's subjective symptom testimony.

B.     Whether the ALJ reasonably evaluated the medical evidence.

C.     Whether the ALJ reasonably evaluated Plaintiff's husband's statements.

Pl. Op. Br. (Dkt. #9) at 1.  Plaintiff argues that, if the Court finds error, it should remand this matter for an award of benefits.  Id. at 13-14.

## VI.    DISCUSSION

### A.    The ALJ Partially Erred in Discounting Plaintiff's Symptom Testimony

Plaintiff argues that ALJ Ross erred in discounting Plaintiff's symptom testimony. Id. at 7-12.  The Court agrees in part.

Plaintiff testified that she can only sit for one to two hours at a time before her feet become painful.  AR at 94-95, 295.  Plaintiff testified that she has to elevate her feet above her heart for one to two hours at a time multiple times a day.  Id.  Plaintiff testified that she can stand for ten minutes at a time.  Id. at 95, 235.  Plaintiff testified that she takes medication for pain and migraines, but the medication makes her extremely tired. Id. at 88, 295.  Plaintiff testified that she cannot work because she would miss work 15 percent of the time because of her foot condition.  Id. at 97.  Plaintiff testified that she suffers from anxiety and depression, which make it difficult for her to be in crowds and maintain attendance at school.  Id. at 80, 86, 235.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."  Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  At this stage, the claimant need only

show that the impairment could reasonably have caused some degree of the symptom; she does not have to show that the impairment caused the severity of the symptom alleged.  Id.  ALJ Ross found that Plaintiff met this first step.  AR at 22.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so.  This is not an easy requirement to meet.'"  Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014-15).  In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ.  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail.  See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

ALJ Ross discounted Plaintiff's symptom testimony because he determined that it was inconsistent with the medical evidence and Plaintiff's general activity level.  AR at 22-23.  The Court will discuss ALJ Ross's analysis with respect to each of Plaintiff's alleged symptom sources:  Foot pain, migraines, and mental health.  See id. at 80, 88, 94-95, 97, 235, 295.

    1.    The ALJ Erred in Rejecting Plaintiff's Testimony Regarding Her Foot Pain Symptoms

ALJ Ross rejected Plaintiff's testimony regarding foot pain as inconsistent with the medical evidence and Plaintiff's daily activities.  Id. at 22-23.  Neither reason withstands scrutiny.

ALJ Ross erred in rejecting Plaintiff's complaints of foot pain as inconsistent with

the medical evidence.  An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155 (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir.1995)).  But the ALJ must explain how the medical evidence contradicts the Plaintiff's testimony.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Furthermore, the ALJ "cannot simply pick out a few isolated instances" of medical health that support his conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms."  Attmore v. Colvin, 827 F.3d 872, 877 (9th Cir. 2016).

Many of the physical exams to which ALJ Ross pointed were from before the alleged onset date, and thus of less relevance.  AR at 645, 661, 668-69, 1005, 1008; cf. Carmickle, 533 F.3d at 1165 ("Medical opinions that predate the alleged onset of disability are of limited relevance.").  The evidence to which ALJ Ross cited that was within the alleged disability period, such as notes that Plaintiff reported near total relief from a spinal cord stimulator, related to Plaintiff's back pain, not her foot pain.  See AR at 716, 945.

ALJ Ross also erred in rejecting Plaintiff's foot pain allegations based on Plaintiff's daily activities.  An ALJ may reject a plaintiff's symptom testimony based on her daily activities if they contradict her testimony or "meet the threshold for transferable work skills."  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (citing Fair, 885 F.2d at 603).  However, "the mere fact that a plaintiff has carried on certain daily activities, such

as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001). ALJ Ross noted that Plaintiff engaged in physical exercise, such as riding her bicycle and running on a treadmill, but those reports were from before the alleged disability period. <u>See</u> <u>id.</u> at 23, 468, 506, 945. The other activities to which ALJ Ross pointed, such as doing homework, going to movie theaters, playing video games, and knitting, do not contradict Plaintiff's testimony that she could not stand or walk for long periods of time due to her foot pain. <u>See</u> <u>id.</u> at 23, 76. ALJ Ross thus erred in rejecting Plaintiff's testimony regarding her foot pain symptoms.

2. <u>The ALJ Did Not Err in Rejecting Plaintiff's Testimony Regarding Her Migraine Symptoms</u>

ALJ Ross rejected Plaintiff's symptom testimony regarding her migraines for two reasons, both of which were reasonable interpretations of the evidence. First, ALJ Ross noted that Plaintiff had been suffering migraines since 1997, but had been able to work since that time. <u>See</u> AR at 22. An ALJ may discount a claimant's symptom testimony when the evidence supports a finding that the claimant was able to continue working despite the symptoms and the condition did not substantially worsen after the alleged onset date. <u>See</u> <u>Sadeeq v. Colvin</u>, 607 F. App'x 629, 631 (9th Cir. 2015); <u>Alexander v. Comm'r of Soc. Sec.</u>, 373 F. App'x 741, 744 (9th Cir. 2010). The record supports ALJ Ross's determination that Plaintiff was able to continue working while suffering from migraines, and contradicts Plaintiff's claims that her migraines would prevent her from working. <u>See</u> <u>id.</u> at 221-26, 825.

Second, ALJ Ross noted that Plaintiff's migraines appeared controlled on medication. Id. at 22. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [social security disability] benefits." Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). Again, the record supports ALJ Ross's determination. See AR at 1257 (noting that Plaintiff had "no headaches on Topomax.").

Plaintiff argues that ALJ Ross failed to address her testimony regarding the side effects from her migraine medication. Pl. Op. Br. at 9. However, apart from Plaintiff's testimony, there are no medical records documenting side effects from Plaintiff's medication. As such, ALJ Ross did not err in failing to separately address Plaintiff's testimony on the side effects of her migraine medication. See Bayliss, 427 F.3d at 1217 (finding that the ALJ did not err in failing to expressly address medication side effects because the record did not support those side effects); Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (finding that the ALJ did not err in failing to include alleged medication side effects in hypothetical questions to the vocational expert because the medical record contained only passing mentions of side effects, and did not demonstrate that they were severe enough to limit the plaintiff's ability to work). In sum, ALJ Ross did not err in rejecting Plaintiff's testimony regarding her migraine symptoms and migraine medication side effects.

3.    The ALJ Did Not Err in Rejecting Plaintiff's Testimony Regarding Her Mental Health Symptoms

ALJ Ross discounted Plaintiff's testimony regarding her mental health symptoms

because he found it inconsistent with the overall medical evidence and Plaintiff's daily activities.  AR at 23.  ALJ Ross partially accepted Plaintiff's testimony, as he limited Plaintiff to "occasionally [sic], superficial interaction with the public, coworkers, and supervisors."  Id. at 21.  ALJ Ross reasonably interpreted the evidence in reaching this conclusion.

With respect to the medical evidence, ALJ Ross cited to a number of mental status exams, which he found unremarkable.  AR at 23, 691-92, 745, 837, 861, 892, 910-11, 1180, 1189, 1193, 1245-46, 1250.  This was a reasonable interpretation of the evidence, and contradicted Plaintiff's testimony about the severity of her symptoms.  See Carmickle, 533 F.3d at 1161.  Similarly, ALJ Ross noted that a few months prior to the disability period, Cornelia Jones, Ph.D., noted that Plaintiff's condition "d[id] not prevent her from deploying to an austere environment and d[id] not interfere with duty performance."  Id. at 23, 517.  Although this report predated the alleged onset date, Plaintiff has not pointed to evidence in the record that her condition worsened after Dr. Jones's finding, nor has the Court noted any such evidence.  ALJ Ross also noted that Plaintiff's anxiety was reportedly in remission as of October 2017.  See id. at 23, 1247.

With respect to Plaintiff's daily activities, ALJ Ross reasonably found that they contradicted Plaintiff's testimony regarding her mental health symptoms.  Plaintiff alleged that her anxiety and depression made it difficult to go to events, socialize, and maintain attendance at school.  Id. at 79-80, 86.  ALJ Ross reasonably determined, however, that Plaintiff's activities, such as going to movie theaters with her children, and

attending school while maintaining a passing grade point average, contradicted the severity of symptoms Plaintiff alleged. See id. at 23, 76, 84-86, 796. Accordingly, ALJ Ross did not err in discounting Plaintiff's testimony regarding the severity of her mental health symptoms.

**B.     The ALJ Did Not Err in Evaluating the Medical Evidence**

Plaintiff argues that ALJ Ross erred in evaluating the medical evidence. Pl. Op. Br. at 3-6, 12-13. In particular, Plaintiff argues that ALJ Ross (1) misinterpreted the opinions of non-examining doctor Kent Reade, Ph.D., (2) violated due process by failing to allow Plaintiff to question non-examining doctor Gordon Hale, M.D., regarding his opinions, (3) failed to address a disability determination from the Department of Veteran Affairs ("VA"), and (4) failed to address the opinions of treating doctor Daniel McGuire, M.D. Id. The Court disagrees.

1.     The ALJ Did Not Err in Evaluating Dr. Reade's Opinions

Dr. Reade reviewed medical records and opined as to Plaintiff's mental capacities as part of the initial administrative review of Plaintiff's claims. AR at 116-17. Among other things, Dr. Reade opined that Plaintiff "would have occasional difficulties in maintaining [concentration, persistence, and pace] when symptomatic, however, [Plaintiff] remains capable of simple and complex tasks [with] reasonable [concentration, persistence, and pace], attending work [within] customary tolerances, working [within] a routine, and completing a normal workday/week." Id. at 120-21. ALJ Ross found Dr. Reade's opinions persuasive. Id. at 24.

Plaintiff argues that ALJ Ross misinterpreted Dr. Reade's opinions. Pl. Op. Br. at 3. Plaintiff argues that Dr. Reade meant Plaintiff would be off-task up to 33 percent of the workday when symptomatic because he used the word "occasional," which Social Security Ruling ("SSR") 96-9p defines as "occurring from very little up to one-third of the time." See SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996).

Plaintiff's argument is not well taken. First, Dr. Reade's full opinion clearly contradicts Plaintiff's strained interpretation of the amount of time Plaintiff would be off-task. Dr. Reade stated that despite difficulties with concentration, persistence, and pace, Plaintiff could attend work within customary tolerances, work within a routine, and complete a normal workday or week. AR at 121. It is nonsensical to interpret this opinion as Dr. Reade stating that Plaintiff would be off-task so much that she could not meet normal work tolerances because he used the word "occasional," when he explicitly stated that Plaintiff could meet such tolerances.

Second, the definition on which Plaintiff relies fails to support her argument. "Occasional" is a defined as a range from very little up to one-third of the time. SSR 96-9p, 1996 WL 374185, at *3. The ALJ, as the factfinder, could reasonably interpret Dr. Reade to have meant that Plaintiff would only have difficulty maintaining concentration, persistence, and pace for a very little amount of time. This is especially true because, again, Dr. Reade explicitly stated that Plaintiff could meet customary workplace tolerances. See AR at 121. Plaintiff has therefore failed to show that ALJ Ross erred in interpreting Dr. Reade's opinions.

2.   The ALJ Did Not Err by Failing to Subpoena Dr. Hale for Questioning

Dr. Hale reviewed medical records and opined as to Plaintiff's physical capacities as part of the initial administrative review of Plaintiff's claims. Id. at 118-20. Among other things, Dr. Hale opined that Plaintiff could stand/walk for six hours in a normal eight-hour workday. Id. at 118.

ALJ Ross found Dr. Hale's opinions persuasive. Id. at 24. ALJ Ross reasoned that Dr. Hale's opinions were "generally consistent with [Plaintiff's] overall unremarkable physical exam findings throughout the record." Id.

Plaintiff argues that Dr. Hale's opinion is "unsupported and inconsistent with the nature of" CRPS, and that ALJ Ross violated due process because he did not give Plaintiff an opportunity to question Dr. Hale on this issue. Pl. Op. Br. at 3-6.

Plaintiff has failed to show that ALJ Ross harmfully erred in declining to make Dr. Hale available for questioning. See Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing Shinseki v. Sanders, 556 U.S. 396, 407-09 (2009)) (holding that the party challenging an administrative decision bears the burden of proving harmful error). "A claimant in a disability hearing is not entitled to unlimited cross-examination, but is entitled to such cross-examination as may be required for a full and true disclosure of the facts." Copeland v. Bowen, 861 F.2d 536, 539 (9th Cir. 1988) (citing Solis v. Schweiker, 719 F.2d 301, 302 (9th Cir. 1983)). It was not necessary to cross-examine Dr. Hale here because ALJ Ross explained how Dr. Hale supported his opinion, and how it was consistent with the overall record. See AR at 24.

Plaintiff argues that SSR 03-2p, 2003 WL 22399117 (Oct. 20, 2003), conflicts with Dr. Hale's opinion. Pl. Op. Br. at 4. That SSR discusses how the Commissioner evaluates cases involving CRPS. SSR 03-2p, 2003 WL 22399117, at *1. As Plaintiff notes, SSR 03-2p states that CRPS and the medications used to treat it "may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior." Id. at *5. Accordingly, CRPS "can interfere with an individual's ability to sustain work activity over time, or preclude sustained work activity altogether." Id. Plaintiff fails to note that both of these statements are permissive; they do not require a finding that someone with CRPS cannot work. Consequently, SSR 03-2p does not in and of itself conflict with Dr. Hale's opinion such that cross-examination was necessary.

Finally, the Court notes that Plaintiff failed to comply with the requirements for a subpoena, so her citation to the Commissioner's Hearing, Appeals, and Litigation Law Manual ("HALLEX") available at https://www.ssa.gov/OP_Home/hallex/hallex.html,[2] is unavailing. Under HALLEX §I-2-5-78, "[a] claimant has a right to request that an ALJ issue a subpoena, but he or she must make the request in writing at least ten business days before the hearing date." The subpoena request must give the name of the witness to be subpoenaed, describe the witness's location, "[s]tate the important fact(s) that the

---

[2] HALLEX "is strictly an internal Agency manual, with no binding legal effect on the Administration or [the] court." Clark v. Astrue, 529 F.3d 1211, 1216 (9th Cir. 2008) (citing Moore v. Apfel, 216 F.3d 864, 868-69 (9th Cir. 2000)). Nonetheless, as an agency manual, it is "'entitled to respect' under Skidmore v. Swift & Co., [323 U.S. 134] (1944), to the extent that it has the 'power to persuade.'" Clark, 529 F.3d at 1216 (citing Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000)).

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 15

witness(es) . . . is expected to prove; and [i]ndicate why the fact(s) could not be proven without issuing a subpoena." Id.

Plaintiff points to a one-page "pre-hearing memorandum," dated August 29, 2018, to support her claim that she asked ALJ Ross prior to the hearing for an opportunity to question Dr. Hale. See Pl. Op. Br. at 4; AR at 332. The hearing in this matter took place on September 6, 2018, see AR at 64-110, so Plaintiff's request was untimely. Moreover, as explained above, Plaintiff has not shown that cross-examination was necessary for the full presentation of Plaintiff's case. ALJ Ross therefore did not err by failing to make Dr. Hale available for cross-examination.

3.   The ALJ Did Not Err in Failing to Address the VA Disability Determination

Plaintiff argues that the ALJ failed to address the disability determination from the VA, which stated that Plaintiff's service-connected disabilities added up to a 100 percent rating. Pl. Op. Br. at 12-13. The Commissioner argues that the ALJ was no longer required to address the VA rating because the Commissioner's new regulations eliminate the need to provide any analysis of another governmental agency's disability determination. Def. Resp. Br. (Dkt. #10) at 15-16. The Court agrees with the Commissioner.

In January 2018, the VA issued a decision finding that Plaintiff had a number of impairments that cumulatively resulted in a 100 percent disability rating. See AR at 1112-41. The primary disabling conditions were plantar fasciitis and flat foot, PTSD, migraines, and partial hysterectomy, with lesser conditions of left and right ankle strains,

left and right lower extremity CRPS, thoracolumbar sprain and status post placement of a spinal cord stimulator, and tinnitus.  Id. at 1122.

ALJ Ross did not mention the VA determination or provide reasons for rejecting it.  See AR at 24-25.  ALJ Ross discussed the medical evidence, which primarily came from providers associated with the VA.  See id. at 20, 22-25, 337-1111, 1142-1292, 1295-1315.

Under the Commissioner's old regulations, an ALJ was required to consider the VA's disability rating, and should "'ordinarily give great weight to a VA determination of disability.'"  Luther v. Berryhill, 891 F.3d 872, 876 (9th Cir. 2018) (quoting McLeod v. Astrue, 640 F.3d 881, 886 (9th Cir. 2011)).  The ALJ could, however, "give less weight to a VA rating 'if [the ALJ gave] persuasive, specific, valid reasons for doing so that [were] supported by the record.'"  Luther, 891 at 876-77 (quoting Valentine, 574 F.3d at 695).

The Commissioner's new regulations purportedly eliminate the requirement that the ALJ discuss a VA determination.  Under 20 C.F.R. §404.1504, for claims filed on or after March 27, 2017, the Commissioner "will not provide any analysis in [his] determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits."  The ALJ must nonetheless still "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision" that is received as part of the social security disability claim.  Id.

Plaintiff has not shown that ALJ Ross harmfully erred in his analysis of the VA's records. See Ludwig, 681 F.3d at 1054 (citing Shinseki, 556 U.S. at 407-09). Although ALJ Ross did not address the specific VA disability determination, ALJ Ross considered the evidence underlying that decision. Nearly all of the medical records in this case came from hospitals associated with the VA. See AR at 337-1111, 1142-1292, 1295-1315. ALJ Ross discussed those records throughout his decision. See id. at 20, 22-25. ALJ Ross thus satisfied his obligations under the Commissioner's new regulations. See Jones v. Berryhill, --- F. Supp. 3d ---, No. 2:18-cv-0080, 2019 WL 3521760, at *15 (M.D. Tenn. Aug. 2, 2019).

### 4. The ALJ Did Not Err in Failing to Address Dr. McGuire's Statements

Plaintiff last argues with respect to the medical evidence that ALJ Ross erred by failing to evaluate statements from Dr. McGuire that Plaintiff was disabled. Pl. Op. Br. at 13. The Commissioner responds that Dr. McGuire's statements did not constitute a medical opinion, so the ALJ had no obligation to discuss them. Def. Resp. Br. at 16. The Court agrees with the Commissioner.

On May 10, 2018, Dr. McGuire completed a disabled parking application from the Washington Department of Licensing on Plaintiff's behalf. AR at 1293-94. Dr. McGuire indicated that Plaintiff met one of seven qualifying conditions for a disabled parking permit, but did not state which condition she met. Id. at 1293. Dr. McGuire wrote that Plaintiff had a "permanent disabling injury," but did not state the nature of the disability or how it disabled Plaintiff. Id. at 1294.

ALJ Ross did not discuss Dr. McGuire's statements.  See id. at 24-25.  Those statements did not constitute a medical opinion, however, so ALJ Ross did not err in failing to discuss them.  A medical opinion is "a statement from a medical source about what [the claimant] can still do despite [his or her] impairments" and whether the claimant has other specific functional limitations.  20 C.F.R. § 404.1513(a)(2).  Dr. McGuire checked a box on a form and wrote that Plaintiff has a permanent disabling injury.  AR at 1293-94.  He did not state with any specificity what Plaintiff can and cannot do, or even identify Plaintiff's alleged impairments.  See id.  Dr. McGuire did not provide any probative opinion for ALJ Ross to evaluate, so ALJ Ross did not err in failing to discuss Dr. McGuire's statements in the disabled parking application.  See Papin v. Barnhart, 221, F. App'x 540, 541 (9th Cir. 2007) (holding that the ALJ was not required to consider a doctor's statements in the claimant's application for a disabled parking placard because they were conclusory and conflicted with the doctor's later evaluation); see also Wilfred-Pickett v. Berryhill, 719 F. App'x 576, 579 (9th Cir. 2017) (holding that the ALJ did not err in affording little to no weight to a disabled parking application completed by the claimant's treating doctor because the doctor merely "selected a checkbox and did not provide additional explanation").

**C.    The ALJ Did Not Harmfully Err in Evaluating Plaintiff's Husband's Statement**

Plaintiff argues that ALJ Ross erred in rejecting Plaintiff's husband's statement.  Pl. Op. Br. at 6-7.  The Court disagrees.

Plaintiff's husband stated that Plaintiff cannot stand or walk for any given length

of time. AR at 273. Plaintiff's husband stated that Plaintiff has migraines that force her to continually take medication and sleep. Id. Plaintiff's husband stated that Plaintiff has little trust in others due to PTSD, which makes it hard for her to get along with others. Id. at 280.

ALJ Ross considered Plaintiff's husband's statements, but gave more weight to the opinions of Dr. Hale and Dr. Reade. Id. at 25. ALJ Ross implicitly rejected Plaintiff's husband's statements that Plaintiff cannot stand or walk for any given length of time because no restrictions in the RFC match that statement. See id. at 21. ALJ Ross did not include any limitations for sleep due to migraines, but limited Plaintiff's exposure to possible triggers such as noise levels, extreme cold, and vibrations. Id. ALJ Ross reasonably incorporated Plaintiff's husband's statement that Plaintiff has trouble getting along with others by limiting Plaintiff to occasional, superficial interaction with the public, coworkers, and supervisors. See id.

In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ must "give reasons germane to each witness" before he can reject such lay witness evidence. Molina, 674 F.3d at 1111 (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." Bruce, 557 F.3d at 1115 (quoting Stout, 454 F.3d at 1054).

ALJ Ross did not err in rejecting Plaintiff's husband's statements regarding

Plaintiff's ability to stand or walk, and the effects of her migraines and medication. Accepting the opinion of a doctor over a lay witness's estimation of a claimant's functional abilities (which necessarily must be inconsistent with the doctor's opinion if the ALJ has to choose) is a reasonable decision, and one that is sufficiently germane to survive on review. See Bayliss, 427 F.3d at 1218.

Similarly, Plaintiff has failed to show that ALJ Ross harmfully erred in rejecting Plaintiff's husband's statements regarding Plaintiff's migraine and medication symptoms. See Ludwig, 681 F.3d at 1054 (citing Shinseki, 556 U.S. at 407-09). Plaintiff's husband's statements on those symptoms did not describe any limitations beyond those Plaintiff herself described, and ALJ Ross reasonably rejected that portion of Plaintiff's testimony. See supra Part VI.A.2. The reasoning behind rejecting Plaintiff's testimony on her migraines and medication symptoms applies equally to Plaintiff's husband's statements on those symptoms, so the ALJ did not harmfully err in rejecting that portion of Plaintiff's husband's statements. See Molina, 674 F.3d at 1122.

## D.    Scope of Remand

Plaintiff asks the Court to remand this matter for an award of benefits. Pl. Op. Br. at 13-14. Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." Leon v. Berryhill, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits, known as the "credit-as-true" rule. Id. at 1044-45. First, the court must determine whether the ALJ has failed to provide legally

sufficient reasons for rejecting evidence. Id. at 1045 (citing Garrison, 759 F.3d at 1020). Second, the court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020. "Even if [the court] reach[es] the third step and credits [the improperly rejected evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." Leon, 880 F.3d at 1045 (citing Treichler, 773 F.3d at 1101).

The appropriate remedy here is to remand for further proceedings. The only issue on which Plaintiff has prevailed is ALJ Ross's rejection of Plaintiff's testimony on her foot pain. That testimony conflicts with Dr. Hale's opinion. The Court cannot resolve this conflict. See Andrews, 53 F.3d at 1039.

On remand, the ALJ must reevaluate Plaintiff's testimony regarding symptoms from her foot pain. The ALJ shall conduct further administrative proceedings as necessary to reevaluate the disability determination in light of this opinion.

VII.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of

42 U.S.C. §405(g).

Dated this 2nd day of October, 2019.

*MrS Lasnik*
ROBERT S. LASNIK
United States District Judge